Neil M. KRUM, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 13, 1996.

Decided Jan. 31, 1997.

Neil M. Krum, petitioner, for himself.

Norina K.S. Stone, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Thomas D. Rees, Norristown, for intervenor, Assigned Counsel Incorporated.

Before COLINS, President Judge PELLEGRINI, Judge and LORD, Senior Judge.

LORD, Senior Judge.

Neil Krum appeals an Unemployment Compensation Review Board order that reversed a referee's decision and denied Krum benefits under the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

The Board found the following facts. Krum originally worked as an attorney at a law firm until January 15, 1993. He filed an unemployment claim at that time and a weekly benefit rate was established. Krum wrote to an agency known as Assigned Counsel in April 1993, indicating that he had seen a newspaper advertisement it had placed and that he was interested in obtaining part-time employment while deciding on a new area of legal work. Assigned Counsel is an agency that maintains a database of attorneys' resumes and essentially matches attorneys with clients seeking attorneys to perform particular assignments. The client may reject an attorney whose resume Assigned Counsel has forwarded to it and the attorney may reject an assignment.

Assigned Counsel interviewed Krum and entered his resume into its database. In September 1993, the parties signed an acknowledgement form setting the terms of their relationship. They agreed that Krum was an independent contractor, not an employee of Assigned Counsel. Assigned Counsel provided no training or tools to Krum, did not guarantee a fixed rate of pay, did not deduct taxes from his pay and issued him a Form 1099 instead of a W–2 at year's end. Assigned Counsel did not require Krum to fill out progress reports, nor did it set his hours of work, his location of work or the sequence for performing services. Krum did not perform services on Assigned Counsel's premises. He could refuse any assignment, could tailor the assignment and bore the risk of not being paid by a client. Krum was supervised and guided by the client and Assigned Counsel had no authority or responsibility pertaining to reviewing his performance or monitoring his work. Krum remained capable of performing services for anyone, as long as there was no conflict of interest and no interference with Assigned Counsel collecting a fee.

Claimant accepted and performed two assignments referred by Assigned Counsel. The first assignment was for four weeks ending October 22, 1993, and the second was with the same client, at a lower hourly wage, for two weeks ending December 2, 1993. A notice of determination was subsequently issued stating Krum was separated from a temporary position with Assigned Counsel and granting him emergency unemployment benefits. Assigned Counsel appealed to the referee, who upheld that determination. Assigned Counsel then appealed to the Board. In reversing the referee's decision, the Board concluded that Krum was not an employee of Assigned Counsel, but was an independent contractor, and thus was not entitled to benefits. Sections 401 and 4($l$)(2)(B) of the Law, 43 P.S. §§ 801, 753($l$)(2)(B). Krum now appeals *pro se* to this Court.

■ Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *York Newspaper Co. v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 475, 635 A.2d 251 (1993), *petition for allowance of appeal denied,* Pa. , 538 Pa. 652, 647 A.2d 906 (1994).

■ Whether Krum was an employee or an independent contractor is a determination of law subject to our review. *D.K. Abbey Marketing, Inc. v. Unemployment Compensation Board of Review,* 165 Pa.Cmwlth. 292,

645 A.2d 339, 341 (1994). Under the applicable law cited by the Board, compensation is payable under Section 401 of the Law to an unemployed "employe." 43 P.S. § 801. Further, "[t]he purpose of . . . [Section 4($l$)(2)(B) of the Law, 43 P.S. § 753($l$)(2)(B),] is obviously to exclude independent contractors from coverage." *C.A. Wright Plumbing Co. v. Unemployment Compensation Board of Review,* 6 Pa.Cmwlth. 45, 293 A.2d 126, 128 (1972). There is a presumption that one who performs services for wages is an employee and not an independent contractor, but this presumption can be overcome if an employer sustains its burden of showing, according to section 4($l$)(2)(B), a claimant was (a) free from control and direction in the performance of the work, where the ability to control and not actual control is determinative; and (b) as to such services, was customarily engaged in an independent trade or business. *York; see also Victor v. Department of Labor and Industry,* 166 Pa.Cmwlth. 663, 647 A.2d 289 (1994).

■ Krum's contention in this appeal is that neither of the two requisite elements were met. However, he does not specifically challenge the Board's findings as being unsupported by record evidence, and those findings, set forth at some length above, refute his arguments.[1]

As to the first element, Krum asserts that Assigned Counsel and the client actually had complete control over his work activities. The question, however, is whether Assigned Counsel, not the client, controlled Krum's work, and in any event Krum was free to refuse any assignment with any client. Further, while we agree with Krum that the signing of a contract designating an individual as an independent contractor does not itself establish independent contractor status, the findings here on their face clearly support the conclusion of freedom from control in the performance of his work. For example, Assigned Counsel provided no training or tools to Krum, had no authority over or responsibility to review his performance or monitor his work, did not guarantee a fixed rate of pay, did not deduct taxes from his pay, issued him a Form 1099, did not require him to fill out progress reports, did not set his hours of work, and did not set his location of work; Krum did not perform services on Assigned Counsel's premises, he could refuse any assignment and he could tailor the assignment.[2]

That these findings sufficiently show freedom from control is further supported by a prior case involving an arrangement similar to the one herein. In *Attorneys On Call v. Unemployment Compensation Board of Review,* 155 Pa.Cmwlth. 96, 624 A.2d 754, 756 (1993), a decision reversing a grant of benefits, we held there was ample evidence an attorney was free from control where she signed an agreement providing she was an independent contractor and was under no obligation to accept assignments, there was no fixed rate of remuneration, there was a possibility of no compensation for interviews with clients, there were no taxes deducted from her pay, and she agreed that she would not be eligible for unemployment benefits.[3] The findings in the case now before us are at least as indicative of freedom from control and indeed more specific than those in *Attorneys On Call.* We therefore conclude as the Board did that the first requisite element was satisfied here.

As to the second element, Krum argues that he was not engaged in a business because he was performing work—in Delaware, where he was not licensed—as a document reviewer, which unique position he had never

---

**1.** Krum cites portions of his testimony and suggests that certain facts should have been found, sometimes contrary to what the Board found, but this effort is unavailing because the Board is the ultimate fact-finder. *Hercules, Inc. v. Unemployment Compensation Board of Review,* 146 Pa. Cmwlth. 77, 604 A.2d 1159 (1992).

**2.** By contrast, in *C.A. Wright,* where we held that claimants were not free from control, the claimants did not have qualifications to hold themselves out as plumbers until after their employer provided training and supplied them with tools, and the employer had the right to direct and control their activities, designate job sites and pay an hourly wage.

**3.** Even accepting Krum's claim here that he never agreed not to seek unemployment benefits, such an agreement in *Attorneys On Call* was in no way dispositive in that case.

before performed, was not an independent trade and did not require an attorney's license. However, although there is no doubt that the client was located in Delaware, the Board did not make findings consistent with Krum's arguments on the document reviewer position. Moreover, even if it were accurate to state, as Krum suggests, that document review itself is not a trade and is not part of those professional abilities he already possessed, Krum's arguments are misplaced here. They might be pertinent to the question of whether one is self-employed after becoming separated from an employer, and is therefore ineligible for benefits under Section *402(h)* of the Law, 43 P.S. § 802(h), but the Board expressly stated that it did not consider section 402(h) as its basis for denying benefits. Instead, the issue in this case is whether Krum was an employee of Assigned Counsel, and the second part of the independent contractor test is examined to resolve that issue.[4]

The primary considerations in this regard are whether Krum was capable of performing the particular activities in question for anyone who wished to avail themselves of such services, and whether the nature of the activities was not such that he was compelled to look to only a single employer for the continuation of such services in an ordinary employer/employee relationship. *D.K. Abbey.* Again, we conclude that the Board's findings set forth above show that these criteria for the second element were satisfied. We specifically emphasize the findings that Krum could refuse assignments and remained capable of performing services for anyone, so long as there was no conflict of interest and no interference with Assigned Counsel collecting a fee. The Board's determination is again supported as well by our decision denying benefits under section 4(*l*)(2)(B) in *Attorneys On Call,* where we stated

> As a professional, Claimant held herself out as capable of performing her particular professional skills for anyone who wished to avail himself of such services. The agreement provides for the possibility that Claimant would prefer not to undertake certain legal assignments and permits her the flexibility to pick and choose....Further, Claimant acknowledged that rates of compensation might differ from assignment to assignment and that the charges would be subject to negotiation between the Claimant and the prospective user of her services.

*Id.,* 624 A.2d at 756–757.

We have disposed of Krum's arguments in some detail and may summarize that, simply put, Assigned Counsel is a referral agency and those it refers are not its employees under the referral arrangement.

Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this 31st day of January, 1997, the order of the Unemployment Compensation Board of Review, No. B–350258, dated June 25, 1996, is hereby affirmed.

---

4. Thus, the cases on which Krum relies, *Reints v. Unemployment Compensation Board of Review,* 86 Pa.Cmwlth. 341, 484 A.2d 857 (1984) and *Buchanan v. Unemployment Compensation Board of Review,* 135 Pa.Cmwlth. 567, 581 A.2d 1005 (1990), are inapposite. We held in *Reints,* which involved a four-part analysis under section 402(h), that substantial evidence did not support a finding that an attorney with a part-time law practice was self-employed following his separation from an employer. Krum notes that, like the claimant in *Buchanan,* he did not form a corporation, advertise or otherwise intend to start a business. However, the question in *Buchanan* was whether a claimant had taken positive steps toward establishing an independent business after he was terminated by an employer, which steps would render him ineligible for benefits under section 402(h). We held that the claimant had not taken such steps where he purchased tools and spools of chain and rented space one day a week at a flea market to sell jewelry.