**Joan B. SILVER, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 16, 2011.

Decided Dec. 29, 2011.

Joan B. Silver, pro se.

Kenneth D. Kleinman, Philadelphia, for intervenor Gerson Lehrman Group, Inc.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McCULLOUGH.

Joan B. Silver (Claimant) petitions *pro se* for review of the May 10, 2010, order of the Unemployment Compensation Board of Review (Board), which determined that Claimant is self-employed and, thus, ineligible for benefits pursuant to section 402(h) of the Unemployment Compensation Law (Law), 43 P.S. § 802(h).[1] We reverse.[2]

The following facts are not in dispute. Claimant began receiving unemployment compensation in May 2009, following the termination of her employment with NAVTEQ, Inc. Early in September 2009, Claimant was contacted by Gerson Lehrman Group, Inc. (Gerson). Gerson had seen Claimant's resume online and asked if Claimant would be interested in providing telephone consultations on an intermittent, as-needed basis with Gerson's clients.[3] Claimant agreed and submitted biographical information for Gerson to display on its website. With respect to the consultations, Claimant set her own hours and rate of pay; she worked from home, and she was under no obligation to accept any assignments. Claimant's job title was "non-agent independent contractor." Claimant accepted a total of four consultation assignments through Gerson, from September 11, 2009, to October 20, 2009. (Board's Findings of Fact Nos. 1–4, 6–8, 13–16.)

On September 16, 2009, Claimant reported the earnings from her first consultation to the unemployment authorities, who for some reason listed Gerson as Claimant's "separating employer," effective September 2009. (Record item no. 1.) The local service center requested more information from Claimant and asked her to complete a "Claimant Questionnaire" form. Claimant submitted the form, indicating that she occasionally performed telephone consultations for Gerson's clients on an as-needed basis, as an independent contractor. (Record item no. 2.)

Thereafter, on November 4, 2009, the local job center issued a determination that Claimant was an independent contractor and was ineligible for benefits under section 402(h) of the Law effective as of the compensable week ending September 19, 2009, through October 24, 2009. Claimant appealed, stating that the deter-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

2. This matter was originally submitted on December 17, 2010, but was assigned a new submission date of December 16, 2011, due to consideration of a similar issue in another case by the Court sitting en banc.

3. Claimant has expertise in the areas of online mapping, GPS-based navigation systems, and wireless devices.

mination was in error because she was not customarily engaged in a business or occupation but, rather, had accepted isolated, sporadic assignments from Gerson and had no reason to believe additional assignments were forthcoming.[4]

At the first hearing before the referee, Claimant testified that, after she was contacted by Gerson about these "as needed" assignments, she wondered whether the part time work would have an impact on her unemployment benefits. Claimant stated that she checked the Unemployment Compensation website and learned, from "FAQ # 13," that she was permitted to earn up to forty percent of her benefits.

Claimant described the manner in which her consulting assignments were arranged and performed as follows. Claimant would receive an email at home from Gerson requesting a telephone consultation for one of its clients. Claimant would respond by answering questions on Gerson's website intended to reflect her level of knowledge and expertise. If, after reviewing that information, the client desired a consultation, Gerson sent Claimant an email advising her that she would be contacted by the client to schedule a phone call. Claimant was free to accept or decline consultations. She also was free to set her own rate of pay and could change it twice a year.

As of the December 16, 2009, hearing, Claimant had provided four telephone conversations and completed one survey, at an hourly rate of $375, during the three month period beginning from September 11, 2009. Her last telephone assignment was on October 20, 2009, two weeks prior to the mailing of the job center's determination that she had become self-employed and, thus, ineligible for benefits.

Gerson did not participate in the hearing, and, based on Claimant's testimony, the referee found that she was not free from Gerson's direction and control in the performance of her duties and was not an independent contractor. Accordingly, the referee held that Claimant was not ineligible for compensation under section 402(h) of the Law.

Gerson appealed, and the Board remanded the matter for a hearing to receive additional testimony concerning both the reason for Gerson's failure to participate in the hearing and the merits of the appeal. Gerson's attorney explained that Gerson had not received timely notice of the hearing, and witnesses for Gerson described the relationship between Claimant and the company and the manner in which Claimant's work was assigned and performed.[5]

After the remand hearing, the Board found that Gerson had established good cause for its failure to appear at the first hearing. To the extent there was conflicting testimony, the Board resolved the same in Gerson's favor. The Board concluded that "Gerson ... has demonstrated that [Claimant] is free from its direction and control and has demonstrated that the business is one which is customarily engaged in as an independent trade or business." (Board's op. at 4.) Citing *Starinieri v. Unemployment Compensation Board of Review*, 447 Pa. 256, 289 A.2d 726 (1972), the Board concluded that Claimant was

---

4. In addition, Claimant noted the job center's erroneous finding that Claimant has an investment in the business. Nothing in the record supports this finding, even by inference.

5. Gerson describes itself as an international expert network that connects clients in the market for expertise with Gerson's "Council Members," individuals who join Gerson's "Council of Experts." Currently, Gerson has more than 250,000 Council Members. (Record item 10, employer correspondence; Record item 15, remand hearing, N.T. at 8–12, 20.)

ineligible for benefits under section 402(h) of the Law.

On appeal to this Court,[6] Claimant first argues that the Board erred in deciding this case based on *Starinieri*, which held that the claimant, who was a shareholder, director and officer of a closely held corporation and had a substantial degree of control of the corporation's activities, was a businessman and not an employee eligible for compensation upon cessation of the business. The court explained that the proper test for determining whether an unemployed corporate employee is a businessman and therefore not entitled to benefits is whether the employee exercises a substantial degree of control over the corporation. Here, Claimant was not a shareholder, director or officer of any corporation, nor was there a business over which she exercised any degree of control. Accordingly, we agree that *Starinieri* is distinguishable and that its holding has no bearing on this case.

■ Claimant next argues that the Board erred in determining that her activities with Gerson render her ineligible for benefits under section 402(h) of the Law, 43 P.S. § 802(h). In relevant part, section 402(h) provides as follows:

> An employe shall be ineligible for compensation for any week in which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be

deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity ... undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood....

43 P.S. § 802(h). The Law does not define the term "self-employment." Thus, courts look to the definition of "employment" provided by section 4(*l*)(2)(b) of the Law:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). This Court has consistently held that, before a claimant will be declared to be self-employed, both elements of section 4(*l*)(2)(B) must be satisfied. *Buchanan v. Unemployment Compensation Board of Review*, 135 Pa. Cmwlth. 567, 581 A.2d 1005 (1990).[7]

---

6. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. Normally the employer has the burden of proving that a claimant is self-employed, but where, as here, the bureau initiates proceedings that result in a suspension of benefits because of self-employment, the bureau car-

ries the burden. *Teets v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 419, 615 A.2d 987 (1992).

We question the practice of identifying any reported source of income as a new "separating employer." It appears that such practice improperly burdens that party with an obligation to defend an action *initiated by the bureau*, particularly where, as here, Claimant represented to the bureau that she *presently* was accepting intermittent assignments from Gerson as an independent contractor. "[Ger-

Factors typically considered with respect to the first prong of this analysis, whether the individual was free from direction and control of the putative employer, include: whether there is a fixed rate of remuneration; whether taxes are withheld from the claimant's pay; whether the putative employer supplies necessary tools or provides on-the-job training; and whether the putative employer controls or has the right to control the time, place, and manner of performance of the claimant's duties. *Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 995 A.2d 887 (Pa.Cmwlth.2010); *CE Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162 (Pa.Cmwlth.2008).

Claimant asserts that she was not free from Gerson's control in the performance of her duties. She points out that Gerson retains the right to terminate a consulting arrangement at any time and for any reason, reserves the right to revise a consultant's web content in whole or in part for any reason, controls the process by which clients find a consultant, and handles all payment matters. However, Claimant does not dispute that she was free to set her own rate of pay, free to set her own hours, free to decline referrals, and free to perform identical services for others. These facts are sufficient to support the Board's conclusion that Claimant was free from Gerson's direction and control, satisfying the first element of section 4($l$)(2)(B).

Alternatively, Claimant argues that her activities with Gerson—three hours of work involving several phone calls over the course of five months—were de minimis and insufficient to demonstrate that she is customarily engaged in an independently established trade, occupation, profession or business. We agree.

We concluded in *Buchanan* that the facts presented were insufficient to satisfy the second element of section 4($l$)(2)(B). In that case, the claimant was unemployed following the June 21, 1989, termination of his employment as an assistant finance manager. In late August of 1989, the claimant bought spools of gold chain to make necklaces and bracelets to sell at a weekly flea market. The claimant paid $16.00 as rent for a booth and spent one entire week selling bracelets and chains at the flea market in September 1989. On January 18, 1990, the claimant's application for benefits was denied on the basis

son] provides opportunities for me.... My work is intermittent...." (Claimant's letter of October 27, 2009, Record item no. 2.) Among other things, the practice erroneously suggests that the claimant is seeking benefits because of a separation from work *with that entity*, which is simply not the case here. As a consequence of that error, the analysis becomes incorrectly framed as an either/or situation, i.e., whether the claimant is either self-employed or is an employee of the putative employer. *See CE Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1167 (Pa.Cmwlth.2008) (citation omitted) ("More typical is the case where the Board finds an absence of control over the claimant but cannot find the claimant's services that of an independent trade or occupation.... Where the second test is not satisfied, the claimant will be found to be an employee, not an independent contractor.") Obviously an unemployed individual can accept occasional assignments for remuneration without being "customarily engaged in an independently established trade, occupation, profession or business."

Here, Gerson's records reflect that Claimant participated in a total of three hours of work for Gerson's clients. (Record item 10.) Gerson pointedly takes no position regarding Claimant's argument that the benefits she was receiving in connection with her previous employment were improperly discontinued based on the services she performed for Gerson but asserts only that Claimant was an independent contractor and not an employee of Gerson's during the weeks at issue. (Gerson's brief at 8 n. 2.)

that he was self-employed. Following a hearing, a referee affirmed the denial of benefits and, thereafter, the Board also affirmed.

On further appeal in *Buchanan,* this Court initially determined that the first element—that the claimant was free from direction and control with respect to his jewelry sales at the flea market—was unquestionably satisfied. However, with respect to whether the claimant was customarily engaged in an established trade or business, the Court held that the claimant's conduct did not reflect positive steps in embarking on an independent trade or business venture but, instead, supported the claimant's testimony that he had no intent to sell jewelry at the flea market on a permanent basis and that the activity was one on the side to make extra money. Accordingly, we held in *Buchanan* that the claimant's activities did not constitute customary engagement in an independently established trade or business and did not rise to the level of self-employment as a matter of law.

Subsequently, in *Teets v. Unemployment Compensation Board of Review,* 150 Pa.Cmwlth. 419, 615 A.2d 987 (1992), we relied on our holding in *Buchanan* to reach a similar result. In that case, the claimant worked for twenty-four years as an account executive with Trans World Airlines; her last day of work was October 19, 1990. Prior to her separation from that employment, in September 1990 the claimant responded to an advertisement offering information on skin care products. She did not act on that information until November 1990, when she went to a meeting and signed a distributor agreement which made her able to purchase the products for herself and supplement her income under the company's pyramidal sales program. The claimant also invested $250.00 to purchase a sales kit. Although

she made efforts to enlist others in the pyramidal sales program, the claimant did not receive any income from her activities until February 1991, when she earned a commission of approximately $6.00.

The referee determined that the claimant's participation in the cosmetic sales program was only a sideline activity. Nevertheless, the referee concluded that the claimant must be deemed to be self-employed, apparently based on the fact that the claimant did not sign the agreement to distribute the products until after she was laid off, thus excluding her from the exception in section 402(h) for activities undertaken while still employed full time.

On appeal in *Teets,* this Court reversed. We first noted that the bureau bore the burden of proving that the claimant was self-employed. We then pointed out that "the fact that an activity which may generate a limited amount of income is not undertaken while a claimant is still employed does not automatically make it 'self-employment.' " *Id.* at 989. Next, we quoted our analysis in *Buchanan.* Concluding that the facts were analogous, we also noted that the claimant's actions were only a sideline activity and that there was no finding regarding the level of time and effort the claimant put into the project. We further observed that, in *Buchanan,* the claimant invested $2,038.00 in tools and supplies, whereas the claimant in *Teets* spent only $250.00 on a sales kit. Relying on *Buchanan,* we held that under the facts presented, the claimant was not self-employed as a matter of law.

■ As these decisions illustrate, the fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business. Moreover, in the present case,

as in *Teets* and *Buchanan*, Claimant's separation from an employer was not relevant to the Board's determination;[8] indeed, Claimant's October 27, 2009, letter indicates that her relationship with Gerson was ongoing. Thus, the determination as to whether Claimant is self-employed cannot be made using an either/or analysis. After careful review, we conclude that the record demonstrates that Claimant was free from Gerson's control in the performance of her telephone consultations, but, contrary to the Board's assessment, the record does not demonstrate that Claimant was customarily engaged in an independently established trade or business.

Accordingly, we reverse.

### ORDER

AND NOW, this 29th day of December, 2011, the order of the Unemployment Compensation Board of Review, dated May 10, 2010 is hereby reversed.

**8.** *See Krum v. Unemployment Compensation Board of Review,* 689 A.2d 330 (Pa.Cmwlth. 1997). In *Krum* we explained that the question of whether one is self-employed *after* becoming separated from an employer and is, therefore, ineligible for benefits under section 402(h) of the Law, *is different from* the question of whether or not the individual was an employee.